**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ENID C.,[1] | ) | |
| *Plaintiff*, | ) | 3:22-cv-1502 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY,[2] | ) | March 18, 2024 |
| *Defendant*. | ) | |

**RULING ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

Plaintiff, who suffers from respiratory conditions, vertigo, cervical spine impairment, obesity, anxiety, and depression, stopped working at a retail store at the outset of the COVID-19 pandemic, and thereafter sought Social Security Disability benefits. Plaintiff appeals the decision of an Administrative Law Judge ("ALJ") finding she was not disabled on the basis of her medical conditions. Plaintiff argues that the ALJ erred by (1) relying on his own lay opinion rather than the medical opinions of record; (2) failing to further develop the administrative record; and that (3) substantial evidence does not support the ALJ's finding that Plaintiff retained a Residual Functioning Capacity ("RFC") of light work, with the added restriction that Plaintiff must avoid concentrated exposure to airway irritants. The Commissioner moves for affirmance of the ALJ's decision. For the following reasons, Plaintiff's motion to reverse, or in the alternative, remand, is

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interest of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] On December 20, 2023, Martin O'Malley replaced Kilolo Kijakazi as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Martin O'Malley for Kilolo Kijakazi in this action.

DENIED, and the Commissioner's cross-motion to affirm the decision of the Commissioner is GRANTED.

## I.        BACKGROUND

The Court will assume the parties' familiarity with Plaintiff's medical history, as summarized in her statement of facts, ECF No. 18-2, which the Commissioner adopts and supplements, ECF No. 15-1, and which the Court adopts and incorporates by reference.  The Court will also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.  The Court will only cite portions of the record and the legal standards necessary to explain its decision.

## II.       STANDARD OF REVIEW

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record.  *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks and citation omitted).  Under this standard of review, "absent an error of law, a court must uphold the Commissioner's decision if it is

supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009).  The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original).  Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld."  *Selian*, 708 F.3d at 417.

### III.     DISCUSSION

The Court finds that the ALJ did not err by failing to further develop the administrative record, and that his RFC determination that Plaintiff was able to perform light work is supported by substantial evidence and is not his simple "layperson" judgment.  For these reasons, Plaintiff has not satisfied her burden of establishing a more restrictive RFC than that assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order).

### A.   The ALJ Did Not Err in Failing to Further Develop the Record

The Court begins with Plaintiff's argument that the ALJ erred by failing to obtain additional treatment records from the year before Plaintiff's hearing and by determining Plaintiff's RFC without the benefit of a medical opinion from one of Plaintiff's treating sources.  For the following reasons, the Court finds that the ALJ did not err in failing to develop the record in these two respects.

#### 1.  Additional Facts

Plaintiff was unrepresented by counsel at the one, twelve-minute telephonic hearing the ALJ held in this matter on October 26, 2021.  *See* Tr., ECF No. 12, at 46, 55.  At the time of the hearing, the ALJ possessed the following as part of the administrative record:  (1) records of

Plaintiff's treatment at Hartford Hospital from May and June 2020 (Tr. 278–331); (2) records of Plaintiff's treatment at Hartford Healthcare from June to August 2020 (Tr. 578–899); (3) UConn Health and UConn Primary Care records from one year prior to the alleged onset date of March 2020, through September of 2021 (Tr. 332–571, 901–1162, 1171–1237); (4) Plaintiff's own statements about her conditions to providers and in her benefits application forms (*see, e.g.,* Tr. 262–65); (5) an April 21, 2021, consultative psychological assessment and opinion by Dr. Maryam Welbourne (Tr. 1163–67); and (6) three opinions by state agency reviewers: a December 7, 2020, physical opinion by Dr. Virginia Rittner (Tr. 81–82), an April 1, 2021, physical opinion by Dr. Gene Godwin (Tr. 70–72), and a April 29, 2021, psychological opinion by Dr. Therese Harris (Tr. 70).

Two items are of note. First, the record did not contain a medical opinion from any of Plaintiff's treating sources. Second, the record contained progress notes from Plaintiff's mental health counselors up until September 23, 2021, *see* Tr. 1215–37, but the last evidence of treatment for one of Plaintiff's *physical* conditions was from January of 2021. It was a record of a CT scan which found bronchitis, and stated that Plaintiff had been prescribed medications and counseled to stop smoking. Tr. at 1138. Otherwise, there was a "gap" in treatment records of Plaintiff's physical conditions since September of 2020, after Plaintiff was discharged from home physical therapy for dizziness and neck pain. *See* Tr. at 798 (stating, upon discharge from home physical therapy, that Plaintiff is "fully independent" and has "all aspects of mobility"), 1005 (September 3, 2020, follow-up).

Accordingly, about one month prior to Plaintiff's hearing, the Social Security Administration contacted Plaintiff via telephone to remind her to submit updated medical evidence, including any medical source information. *See* Tr. at 270, 106, 121. Plaintiff responded

that she did not have any new evidence to submit.  Tr. at 270.  At the hearing, the ALJ asked Plaintiff if she would "like some time to speak with an attorney about your case" and to which Plaintiff responded, "[n]o, I'm okay."  Tr. at 47.  The ALJ confirmed whether "[y]ou want to represent yourself today," to which Plaintiff responded, "[y]es.  *Id.*  When asked if there are any other records that Plaintiff possessed which had not been sent to the ALJ, Plaintiff responded "[n]o. I think I sent everything."  Tr. at 48.  The ALJ then proceeded to inquire about Plaintiff's mental and physical condition, and examined vocational expert Hank Lerner.  *See* Tr. 47–54.

The ALJ denied Plaintiff's application for social security benefits on November 3, 2021. Tr. at 43.  Plaintiff retained counsel current counsel sometime around December of 2021.  *See* Tr. at 18.  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied the appeal on September 29, 2022.  Tr. 1–6.  Plaintiff's counsel did not submit any additional medical evidence as part of the appeal.  *See id.*

### 2. Discussion

Plaintiff contends that the ALJ's failure to obtain a medical opinion from any of her treatment providers led him to substitute his own lay opinion for a medical opinion in determining Plaintiff's RFC.  She further argues that the ALJ was largely missing the treatment records for Plaintiff's cervical spine issues for the year leading up to the hearing, and had an obligation to obtain them.  The Court cannot find that the ALJ erred in these respects.

Because of the nonadversarial nature of a social security benefits proceeding, "an ALJ is under an affirmative obligation to develop a claimant's medical history."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  This duty is "heightened" when the claimant is proceeding *pro se*. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009).  However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the

ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted).

Failure to obtain the medical opinion of a treating source is not "per se error." *Alex C. v. Kijakazi*, No. 3:22 CV 117(MPS)(RMS), 2023 WL 2865103, at *14 (D. Conn. Feb. 16, 2023) (quoting *Delgado v. Berryhill*, No. 3:17 CV 54(JCH), 2018 WL 1316198, at *8 (D. Conn. Mar. 14, 2018)), *report and recommendation adopted* 2023 WL 2706232 (D. Conn. Mar. 30, 2023).  In *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (summary order), the Second Circuit held that an ALJ's failure to obtain a medical source opinion from a *pro se* claimant's treating physician, or to encourage the claimant to do so, may constitute reversible error when "the medical records obtained by the ALJ do not shed light on [claimant's] residual functioning capacity, and the consulting doctors did not personally evaluate [claimant]."  *See id.* (distinguishing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)).  It is insufficient if the "medical records discuss [claimant's] illnesses and suggest treatment for them, but offer no insight into how [claimant's] impairments affect or do not affect [their] ability to work, or [claimant's] ability to undertake activities of her everyday life."  *Id.* at 109.

More recently, in *Rivers v. Kijakazi*, No. 21-1935-cv, 2023 WL 2485467, at *2 (2d Cir. Mar. 14, 2023) (summary order), the Second Circuit found reversible error when the "ALJ was on notice that [claimant] had three treating physicians . . . and that [claimant] had seen one of the three . . . as recently as a few weeks prior," but "did not contact any of these treating physicians for their medical opinion."  The Second Circuit found that substantial evidence did not otherwise support the ALJ's finding because he relied on an "internally inconsistent report" from a state agency reviewer.  *Id.* at *2 (quoting report's inconsistent statement that claimant "was unable to stand and walk on heels and toes.  She was unable to squat.  Can walk on heels and toes without

difficulty.  Squat full.").  Without a competent medical opinion, the ALJ improperly relied on his own lay opinion which contradicted other medical evidence.  *See id.* at *3.

Notably, the Second Circuit has yet to address an ALJ's obligation to obtain and consider medical source opinions after the treating physician rule, which required ALJs to defer to opinions from treating sources, was repealed in 2017.  *See Alex C.*, 2023 WL 2865103 at *15.  "Since a medical source statement was likely to be afforded controlling weight under the 'treating physician rule,' an ALJ's failure to secure one was particularly problematic when this rule was in effect." *Id.*  Now, however, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Medical opinions are one of several types of evidence that an ALJ may consider in assessing a claimant's RFC.  *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Regardless of this change, however, the rationale of protecting *pro se* claimants and developing the record in a nonadversarial setting applies, and *Guillen* and *Rivers* provide valuable guidance.

Applied to this case, the Court cannot find the ALJ's failure to obtain a treating source opinion was reversible error or that there is any "gap" in the record.  The ALJ contacted Plaintiff one month prior to the hearing to encourage her to submit additional medical information, including from a medical source, and she confirmed at the hearing that she believed she sent everything.  Plaintiff did not submit a medical source statement or otherwise supplement the record after obtaining counsel.  Unlike *Guillen*, here there is a psychological opinion by a doctor who personally evaluated Plaintiff, Dr. Welbourne, and the treatment records the ALJ considered *do* shed light on how Plaintiff's psychological and physical impairments affect her ability to work during the relevant period.

As for her psychological impairments, the record contains counseling notes current to about one month before Plaintiff's hearing date.  The most recent September 23, 2021, note states that "social situation provokes anxiety" in Plaintiff, and "social situations [are] avoided, fear out of proportion, fear is persistent, causes significant impairment."  Tr. at 1212.  This and similar evidence shed light on Plaintiff's ability to cope with common work stressors.  Thus, with respect to psychological impairments, there was no impermissible gap in the records, and a formal treating source opinion was not required for the ALJ to evaluate Plaintiff's mental impairments.

There is also medical evidence about how Plaintiff's physical impairments—respiratory conditions, vertigo, and cervical spine impairment—affect her ability to work in the absence of a medical source statement.  As for the respiratory conditions, there is evidence that although Plaintiff suffered from chronic bronchitis, Plaintiff continued to smoke cigarettes heavily in the relevant period.  *See, e.g.,* Tr. at 926, 997, 1138.  Based on this evidence, the ALJ found that Plaintiff "reasonably requires a restriction from known respiratory irritants or triggers" as part of her RFC.  Tr. at 35, 37.  As for her vertigo and cervical spine impairment, the ALJ considered evidence of Plaintiff's successful discharge from home physical therapy in July of 2020.  An August 17, 2020, progress note states that Plaintiff rates her chronic pain at an "8/10," but that after a physical exam, "Patient raises from a sitting position without difficulty," "walks with a steady gait with no signs of weakness," "strength is 5/5 bilaterally, the exception being 4/5 right bicep strength, hand grasp, and wrist extension," and "[s]ensation to light touch is present but mildly diminished down the anterior aspect of the right arm as well as the third and fourth digit of the right hand"; although rotation of her spine is "75% of normal bilaterally with pain in this maneuver" and "[l]ateral bending is 50% of normal with pain."  Tr. at 907–09; *see also* Tr. 1005 (September 3, 2020, treatment note that muscle strength was full (5/5) from C5-T1 and L2-S1

distribution except for near-full (4/5) strength in the right bicep, hand grasp and wrist extension; though Plaintiff rotation of spine and lateral bending is limited with pain).  This and similar medical evidence allowed the ALJ to conclude that Plaintiff was able to perform light exertional work while frequently performing postural activities; occasionally climbing ladders, ropes, and scaffolds; and no manipulative limitations, with the added limitation that Plaintiff must avoid airway irritants. *See* Tr. at 38, 81–82.

The ALJ's "failure" to obtain any treatment records of Plaintiff's physical conditions since January of 2021 was also not an error.  Plaintiff was prescribed management medications for her chronic respiratory conditions in response to the January 2021 CT scan, and the ALJ reasonably attributed the absence of physical treatment for Plaintiff's vertigo and cervical spine impairment since September of 2020 as a decision not to seek treatment.  Although Plaintiff continued to treat her psychological conditions through the date of the hearing, *see* Tr. 1177–1211, there is no evidence that Plaintiff sought treatment for her physical condition after January of 2021 nor that her physical conditions deteriorated over that period.  At most, there are passing references in Plaintiff's September 2021 counseling notes that she "is still having pain in her neck and back so she will be getting x-rays done," though "[i]n the past they have said she needs surgery of her neck but she doesn't feel ready to do that right now and is waiting to see if there are other options to treat her pain."  Tr. at 1215.  More generally, the Second Circuit has held that an ALJ who did not obtain medical records for the ten months prior to the ALJ's decision did not commit legal error if the record was otherwise comprehensive and was "adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  Because the record provided adequate support for the ALJ to make an RFC determination that Plaintiff could perform light work, the ALJ did not

fail to develop the record when he did not obtain a treating source opinion or additional records from the year before the hearing—particularly when no such records were provided once Plaintiff obtained counsel.

For substantially similar reasons, the Court rejects Plaintiff's remaining two arguments below and concludes that substantial evidence supports the ALJ's RFC finding, and that the ALJ did not arbitrarily substitute his own judgment for competent medical opinion. Unlike in *Rivers*, the opinions the ALJ relied upon are not internally inconsistent nor at odds with other medical evidence in the record.

              B.  <u>Substantial Evidence Supports the ALJ's RFC Finding</u>

The Court finds that, in addition to having adequately developed the record, substantial evidence supports the ALJ's finding that Plaintiff can perform light work with the added restriction that she must avoid concentrated exposure to airway irritants.

Beginning with Plaintiff's psychological condition, the ALJ relied on Dr. Welbourne's evaluative opinion, which he found "generally persuasive," and Dr. Harris' review, which he found "partially persuasive." Tr. at 38. Dr. Welbourne personally interviewed Plaintiff and determined on April 21, 2021, that Plaintiff has no cognitive impairments. Plaintiff scored a 29/30 on the mental state examination, "placing her in the normal range for cognitive functioning." Tr. at 1168. Although Dr. Welbourne found a "mild-to-moderate impairment" in the ability to "cope with typical daily life and work stressors," a "mild impairment" to "maintain concentration, attention, and pace," and a "mild impairment" to "respond appropriately to usual work situations and changes in routine," Plaintiff "would most likely be able to perform basic tasks of simple employment." Tr. at 1169. Consistent with Dr. Welbourne's opinion, state reviewer Dr. Harris found upon reviewing the record that Plaintiff had "would have difficulty with rapid, unexpected, or

demanding work changes, but would be able to recognize normal hazards, adapt to minor changes in work demands, and manage routine work-related stress/pressures." Tr. at 73. As discussed above, in the months after these opinions, treatment records from Plaintiff's mental health providers show that Plaintiff struggled to leave the house and sleep due to anxiety, but that Plaintiff's mental condition otherwise remained relatively stable. *See* Tr. at 1215. Plaintiff self-reported that she was generally able to care for her personal needs, prepare meals, clean her home, shop, and manage her finances, which appropriately supported the ALJ's decision that her mental conditions did not significantly interfere with her daily functioning. Tr. 205–07. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (considering evidence that claimant watched TV, read, used a computer, occasionally drove, and cared for infant). In short, for similar reasons that the ALJ need not have developed the record further, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were nonsevere.

As for Plaintiff's physical limitations, the ALJ's RFC finding is also supported by substantial evidence. Plaintiff does not contest the ALJ's finding that she should not be exposed to airway irritants. Rather, Plaintiff argues that she is only able to perform sedentary work, rather than light work, due to her severe neck and back pain and her manipulative (arm and finger) limitations. The state agency examiners' opinions, however, support the ALJ's RFC finding.

First, Dr. Rittner, who reviewed the evidence in December of 2020 and concluded Plaintiff could perform light work, found a "discrepancy" between Plaintiff's subjective statements of pain and the objective evidence. Tr. 81–82. Dr. Rittner found that Plaintiff had "no" manipulative limitations and that Plaintiff could "occasionally" climb ladders, ropes, and scaffolds as opposed to "never." Tr. at 81. The treatment records provide support for Dr. Rittner's findings, such as Plaintiff's successful discharge from home physical therapy and her decision not to seek further

treatment.  *See* Tr. at 909 (August 17, 2020, treatment note stating Plaintiff had "4/5 right bicep strength, hand grasp, and wrist extension"); 1005 (September 3, 2020, treatment note with similar finding and that Plaintiff had some "mild weakness" in her upper right arm); *see also* Tr. at 37–38 (ALJ noting that after discharge from physical therapy, Plaintiff had "wanted to think about surgical intervention," but "has not sought further treatment for her neck or right upper extremity complaints").

When state agency medical consultant Dr. Godwin reviewed the record in April of 2021 after Plaintiff sought reconsideration, he found additional limitations, noting that Plaintiff was "limited" in reaching overhead and fingering on her right side; this issue occurred "frequently but not constantly." Tr. at 71.  Otherwise, however, Dr. Godwin opined that there was a "discrepancy between objective evidence and allegations of complete and total physical disability which erodes consistency of [claimant's] statements," and that the only postural exertion Plaintiff could "never" do was climbing ladders, ropes, and scaffolds." Tr. 71–72.  Dr. Godwin noted that, although there were significant imaging abnormalities for Plaintiff's cervical spine, her functional exam was only mildly abnormal and she was pursuing conservative treatment.  On "this basis primarily," Dr. Godwin likewise found Plaintiff could perform light work.[3]  Tr. at 72, 74.  The ALJ addressed Dr. Godwin's assessments of Plaintiff's manipulative limitations by noting that the amount of limiting and carrying is inherently limited for light work, and therefore the manipulative limitations were taken into account.  Tr. at 38.

---

[3] Plaintiff's contention that a state agency consultant opined that Plaintiff could only work at a sedentary exertional level appears incorrect.  The only mention of the word "sedentary" in the transcript appears in a summary of the medical evidence under the abbreviation "MPD."  Tr. at 80.  Although that abbreviation is not explained, the Court cannot conclude that from its review of the record that any state agency consultant opined Plaintiff can only work at the sedentary exertional level.  Moreover, as the Commissioner argues, there is no evidence to suggest Plaintiff could not perform the standing, walking, lifting, and carrying requirements of light work.  *See* 20 C.F.R. § 404.1567(b).

Therefore, there is substantial evidence in support of the ALJ's finding that Plaintiff was able to perform light exertional work.  "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  For similar reasons that Dr. Godwin and Dr. Rittner found Plaintiff's statements inconsistent with the medical evidence, the ALJ found that Plaintiff's subjective complaints of pain were generally unsupported.  *See* Tr. at 37 ("As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not fully supported by the objective medical evidence and because claimant's level of care and activities and daily living are consistent with greater work capacity.").  It is not the Court's role to weigh conflicting evidence, such as Plaintiff's subjective statements.  *See Cage*, 692 F.3d at 122.  Rather, the decision of the ALJ should be upheld so long as it is supported by substantial evidence, as it was here.

C. The ALJ Did Not Err by Relying on his own "Lay Opinion" rather than Medical Opinions

Finally, the Court rejects Plaintiff's last argument that the ALJ improperly relied on his own lay opinion.  Plaintiff argues that the ALJ relied on his own "layperson judgment" by ignoring the very medical opinions he found persuasive and which, Plaintiff claims, supported a more restrictive RFC.  This argument fails quite simply because the medical opinions do not support a more restrictive RFC for the reasons discussed.

To recap, Dr. Welbourne's and Dr. Harris' opinions support a finding that Plaintiff's mental impairments were nonsevere.  At most, Dr. Welbourne and Dr. Harris found that Plaintiff would suffer some limited impairment in the ability to cope with typical work stressors, maintain

concentration, and respond appropriately in work situations and changes in routine.  The ALJ found Dr. Welbourne's opinion "generally persuasive" and Dr. Harris' opinion "partially persuasive" after consulting the other medical evidence, and also noted that Plaintiff "was able to tolerate the stress and social contact required for retail work for several years, until the pandemic caused her to be furloughed."  Tr. at 38.  In short, the ALJ's finding that Plaintiff lacked severe mental impairments is plainly consistent with both opinions.

The ALJ diverged from two aspects of Dr. Godwin's opinion:  Dr. Godwin's finding that Plaintiff could "never" climb ladders, ropes, and scaffolds, and that Plaintiff had limited manipulation in her right arm.   Instead, the ALJ sided with Dr. Rittner, and found that Plaintiff could "occasionally" climb ladders, ropes, and scaffolds and had no manipulative limitations based on treatment records and her decision not to pursue further treatment.  *See* Tr. 37–38 (noting Plaintiff had "wanted to think about surgical intervention," but "has not sought further treatment for her neck or right upper extremity complaints").  The ALJ further concluded that the limitations on lifting and carrying inherent in the "light" work designation would account for the manipulative limitations Dr. Godwin identified.  Tr. at 38.  In sum, the ALJ made a considered judgment based on the evidence in the record that Plaintiff was able to perform light exertional work; he did not improperly rely on his own layperson judgment.[4]

---

[4] In any event, the Court notes that under 20 C.F.R. § 416.920c(a), the ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  Rather, the ALJ must consider several factors relevant to the consideration of all medical opinions; the most important of these factors being supportability and consistency. *Id.* § 416.920c(b)(2).  As district courts in this circuit have noted, "[a]t their most basic . . . the ALJ [must] explain her findings regarding the supportability and consistency of each of the medical opinions, pointing to specific evidence in the record supporting those findings." *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-cv-1718-FPG, 2021 WL 856909, at *4 (W.D.N.Y. Mar. 8, 2021) (internal quotation marks and citations omitted).  Accordingly, the ALJ assigned the opinion of Dr. Welbourne "generally persuasive" weight and the three state agency opinions "partially persuasive weight" and described how the opinions were supported by and consistent with other medical evidence in the record. *See* Tr. 35–38.

**IV.     CONCLUSION**

For the reasons described herein, Plaintiff's motion is DENIED and Defendant's motion is

GRANTED.  The Clerk of Court is directed to enter judgment for Defendant and close the case.

**SO ORDERED** at Hartford, Connecticut, this 18th day of March, 2024.


                                          _/s/ Sarala V. Nagala_____
                                          SARALA V. NAGALA
                                          UNITED STATES DISTRICT JUDGE